Clarkeson Engineering Co. Inc. *v.* Massachusetts Turnpike Authority.

CLARKESON ENGINEERING CO., INC. *vs.* MASSACHUSETTS TURNPIKE AUTHORITY.

Suffolk.    January 7, 1964. — March 4, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Contract*, Construction, With engineer. *Interest.*

*Chas. T. Main, Inc.* v. *Massachusetts Turnpike Authority, ante,* 154, followed in denying to an engineering firm, which had performed the engineering services in connection with construction of a section of a turnpike for a turnpike authority, compensation in addition to the fee provided for in the firm's contract with the authority where the period originally contemplated for performance of the firm's services was substantially prolonged through delay in completion of the construction work.  [175–176]

An engineering firm, which had performed the engineering services in connection with construction of a section of a turnpike under a contract with a turnpike authority basing the firm's fee on the cost of the construction work and payments by the authority for relocation of public utility facilities and providing for the authority's retaining a part of the fee until completion and acceptance of the construction work and "final determination" of the cost, was, in the circumstances, properly awarded interest on the retainage from the date of the writ in an action against the authority to recover the retainage, although one of the bills for relocation of public utility facilities was not paid until a later time.  [176–178]

Where certain work done by an engineering firm, with oral permission of an official of a turnpike authority, in designing bridges for a section of a turnpike to be constructed by the authority was merely preliminary to execution of a formal written contract between the firm and the authority providing for performance by the firm of "complete and comprehensive engineering services" respecting such section of the turnpike, in-

cluding a "design phase," and making no provision for payment for the bridge designing already done, such preliminary work must be treated as intended to be covered by the firm's fee fixed in the written contract and was not to be paid for in addition to the fee.   [178–179]

CONTRACT.   Writ in the Superior Court dated September 9, 1959.

The action was heard by *Cahill*, J.

*Francis V. Matera* (*Walter J. Hurley & Timothy J. Driscoll* with him) for the defendant.

*Paul V. Power* (*Robert S. Pirie* with him) for the plaintiff.

CUTTER, J.   The plaintiff (Clarkeson) was designated section engineer of section L of the Massachusetts turnpike. This section lies between Route 128 in Weston and Hopkinton.   Clarkeson executed a contract with the authority in all essential respects (including certain specifications therein mentioned) similar to those considered in *Chas. T. Main, Inc.* (Main) v. *Massachusetts Turnpike Authority, ante,* 154, and in *Fay, Spofford & Thorndike, Inc.* (Fay) v. *Massachusetts Turnpike Authority, ante,* 169.

Clarkeson brought this action to recover (a) additional compensation for its engineering services based upon the circumstance that they continued beyond the date upon which it was expected the turnpike would be opened; (b) certain retained portions of the fees for engineering services, with interest; and (c) an additional amount discussed in greater detail below.[1]   The case was heard by the same auditor to whom the *Main* case and the *Fay* case had been referred.   The same judge of the Superior Court, who decided the *Main* and *Fay* cases, then heard the case upon the auditor's report, a limited amount of documentary evidence, and the testimony of one witness.   The judge found that Clarkeson was entitled to recover fee retainages of $20,043.28, and additional compensation of $174,929.28, each with interest from September 9, 1959, the date of the writ.

---

[1] No similar claim was made in the *Main* case or in the *Fay* case.   All but one of certain special claims by Clarkeson have been waived, or disposed of in connection with its claim for additional compensation.

The case is here upon a consolidated outline bill of exceptions presenting Clarkeson's and the authority's exceptions to various rulings by the judge.

### A. Claim for Additional Compensation.

The auditor made findings very closely similar to those in the *Main* case and in the *Fay* case upon Clarkeson's claim for additional compensation for engineering work required after November 15, 1956, the date upon which it was expected the turnpike would be open. It would serve no useful purpose to set these findings out in detail. The contract documents, in the circumstances found by the auditor and the judge, preclude any recovery of such additional compensation for reasons discussed in the *Main* case. As in the other cases, the auditor found that the "delay in opening the turnpike . . . was not due to any fault" of Clarkeson, the authority, or the latter's general engineering consultants. "The parties were desirous of completing the work . . . at the earliest possible date and did what was within their power to achieve this result." This finding we construe as essentially equivalent to the finding of good faith, on the part both of the authority and the section engineer, made in the other cases.

As to one construction contract (no. 51–094), indeed, the auditor found (subject to a motion to strike these findings by Clarkeson) that Clarkeson was "not entitled to recover compensation for any additional services." The other four construction contracts were made "on various dates between January 13 and June 16 of 1955, and had specified completion dates between May 31, 1956, and Sept[ember] 30, 1956. These . . . contracts . . . were within the contemplation of the parties" when the Clarkeson contract was effected. Contract 51–094, the auditor found, stands on a different basis. It was not made until April 26, 1956, and it had a completion date of November 1, 1956. It was a "crash program." Clarkeson was given an increased fee of one and one-half per cent of construction cost for its services in the design phase of this contract. The auditor

concluded "that the parties could have reasonably contemplated" delays in the performance of this contract, "especially [in view of] the fact that its scope was substantially greater than had been originally planned."

Clarkeson argues an exception to the denial of his motion to strike out these findings of the auditor. We need not decide whether the motion should have been granted. There can be no recovery of any additional compensation for engineering services in connection with this or any other construction contract, on the ground that the construction phase of Clarkeson's contract extended beyond November 15, 1956. Contract 51-094 stands no better and no worse than the other four construction contracts. The contract provisions discussed in the *Main* and *Fay* cases preclude such a recovery for reasons there set forth.

The authority's requests for rulings numbered 1, 8, 9, 10, 13, and 14 (which are similar to those with like numbers in the *Main* and *Fay* cases) were improperly denied. The authority's exceptions to the denial of these requests are sustained. The trial judge correctly gave those rulings requested by the authority on this phase of the case. Clarkeson's exceptions to these rulings are overruled. Judgment is to be entered for the authority on all counts seeking additional compensation for engineering work after November 15, 1956.

## B. THE RETAINAGE INTEREST CLAIM.

The auditor found that Clarkeson was owed $20,043.28 for amounts of fee retained, which the authority was justified in retaining "until the completion and acceptance by the . . . [authority] of all construction work performed by all of the construction contractors and the final determination of the cost of construction." The authority now admits that this amount is owed to Clarkeson,[2] but claims that

---

[2] In answer to interrogatories the authority had admitted that a larger amount ($26,486.16) was owed to Clarkeson but explained this answer as based in part upon a mistake in crediting Clarkeson with a commission upon a payment made to the Boston Edison Company for a land taking. Upon this amount Clarkeson was entitled to no fee.

it is not yet due, because "a final determination of the cost of construction could not be made because of the various claims made by" Clarkeson and because the authority "never received a final invoice from" Clarkeson. "On June 26, 1958, the final value of the last [s]ection L contract was accepted by the . . . [authority]. The last public utility bill was paid on September 24, 1959. . . . In view of the conflicting claims . . . and the conflicting evidence as to the amount due," the auditor found that interest on the retainages ($20,043.28) should run from September 9, 1959, the date of the writ.

When this action was brought the turnpike had been open for nearly two and one-half years. The cost of the last construction contract had been finally determined over fourteen months earlier.[3] As to the amount finally awarded, the authority seems never to have disputed that at least this amount was still owing to Clarkeson. Although the subsidiary findings concerning the utility bill paid on September 24, 1959, are meager, there is no finding that the amount of this bill (and of the other amounts upon which Clarkeson was entitled to earn percentage fees) had not been ascertained earlier. We conclude, in the circumstances, that the trial judge was warranted by the general findings of the auditor, concerning the claim for interest on the retainages, in awarding interest from the date of the writ. See also the discussion of the retainage interest claim in the *Main* case, *ante,* 154.

The denial of the authority's motion to strike the portion of the auditor's report allowing interest on the retainages from the date of the writ has not been shown to have been based on error of law. The rulings concerning this claim

---

[3] The progress in the performance of the five construction contracts in section L was as follows:

| Contract No. | Completion Date in Contract ('all 1956) | Actual Date of Substantial Completion | Final Completion | Final Cost Estimate Accepted |
|---|---|---|---|---|
| 51–090 | May 31 | Nov. 17, 1956 | Nov. 17, 1956 | July 11, 1957 |
| 51–091 | July 31 | Dec. 21, 1956 | May 24, 1957 | Apr. 17, 1958 |
| 51–092 | Aug. 31 | Apr. 12, 1957 | May 25, 1957 | June 12, 1958 |
| 51–093 | Sept. 30 | May 15, 1957 | July 18, 1957 | June 26, 1958 |
| 51–094 | Nov. 1 | Dec. 10, 1956 | May 14, 1957 | Oct. 3, 1957 |

requested by the authority, were given. Clarkeson's requested ruling (no. 2, that interest was allowable from the date of the writ) was properly given. The authority's exceptions dealing with this interest claim are overruled.

### C. CLAIM CONCERNING DESIGN OF BRIDGES.

Clarkeson claims that it is entitled to recover $9,240.36 for designing eight bridges at the request of the chairman of the authority's board. The auditor found that Clarkeson "did perform . . . design work for bridges between March 1 and June 18, 1954" and that "$9,240.36 is a fair and reasonable value of this design work." Clarkeson's apparently uncontradicted evidence before the auditor (supplemented in minor degree later before the judge) had indicated that the authority's chairman had told Clarkeson on April 23, 1954, (a) that the latter could go ahead on services and preliminary work on the bridges, taking the risk that the bonds to finance the turnpike project would not be sold, and (b) that the bridges should be designed in accordance with standards employed by the Massachusetts Department of Public Works. Shortly before Clarkeson's contract was signed, an officer of the authority's general engineering consultant told Clarkeson that the bridges must be redesigned in accordance with different standards. This necessitated extra work.

Although the auditor made no findings upon this evidence, he apparently believed it because he found that if Clarkeson had "not been awarded the contract for [s]ection L after the . . . bonds had been sold . . . [he] would have [had] no difficulty in finding that . . . [Clarkeson] would be entitled to recover on this claim." Clarkeson, however, was awarded the contract which contains no reference to payment for preliminary work done. We conclude, as did the auditor and the trial judge, that Clarkeson is not entitled to recover on this claim. We infer that this work was preliminary to the execution of the written engineering contract with Clarkeson and not an unrelated arrangement. Because no provision was made in the written contract for payment of this work done with the chairman's oral per-

mission, we think that it must be treated as intended to be covered by the fee for the design phase of the written contract.

Clarkeson's exceptions to the denial of the motion to strike out the auditor's conclusions concerning this claim and to the denial of a ruling (no. 19) requested by Clarkeson concerning this claim are overruled.

### CONCLUSION.

Other exceptions have not been argued or have been waived.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*